Good morning, Your Honors. My name is David Poore and I represent the appellant, Marco Ramirez, in this case. This is an appeal from a wrongful termination case in which the primary issue appears to be exhaustion of administrative remedies before the Labor Commissioner and whether or not there needs to be some kind of exhaustion before an affected employee files a complaint under Labor Code Section 6310, which is the Cal-OSHA version of the Anti-Retaliation Provisions for Reporting Unsafe Working Conditions in One's Workplace. I do have to advise the panel that in doing preparation last night, I did find another published opinion by the California Court of Appeals that addressed the issue of exhaustion. We have a sheet you can give that citation later. In that opinion, which is McDonald v. State of California, the Court of Appeals for the Third Appellate District does hold that exhaustion is required before an employee is going to file a complaint under 6310. That puts the State of Law and the California Immediate Court of Appeals in conflict at this point. We have Lloyd out there, which is a 2009 opinion from L.A. County, that holds that exhaustion is not required in a circumstance that is very similar to the case before the Court today. One of our challenges always on these State law cases is we're absent certification try to navigate what we believe the California Supreme Court would do. And it was somewhat compelling to me that Lloyd didn't cite Campbell. And Campbell does seem to be controlling law. Can you respond to that, please? Absolutely. In the Lloyd case, although Lloyd did not provide an in-depth analysis of Campbell, we will concede that they did not. In the Lloyd case, the county counsel did argue Campbell. And the Court will note that Campbell is cited in the Lloyd opinion to that effect. So the county counsel did argue that Campbell did apply to this situation. But for whatever reason, the Lloyd court didn't address that in any type of legal analysis. But they did recognize that Campbell was raised as an issue. Why wouldn't we just go to Campbell and use that as the controlling principle? Because I think what Campbell does for California jurisprudence is it sets forth certainly the basic rule. The basic rule is exhaustion is required for claims in which there is a process, like the process that existed at the University of California under their personnel policies manual. That was something that was certainly required before any lawsuit. But I think what we have here is we've got court of appeals cases that address the specific issue of whether or not somebody needs to exhaust under 6310, as opposed to some other mechanism or some other scheme under California law, whether it be regulatory law or statutory law. And so I do think that Campbell is the controlling guidance. I think it sets forth the general rule. And I think we have two published decisions. We have Lloyd and we have Daley. And then we've got now this new published decision, McDonald, which recently came out in August of this year, which holds to the contrary. And so what you have is you've got, you know, a conflict in California law as to whether or not exhaustion is required for this. And I think a good opinion to look at is perhaps Creighton 2, in which Judge Wagner does look at this and he does a very careful analysis of this dispute and determines, ultimately reverses himself and determines that there is no exhaustion required. And I thought what was compelling there is that Judge Wagner reviewed an opinion letter by the labor commissioner himself about whether or not exhaustion was required. And, you know, for me that's important because I'm a trial lawyer and I represent plaintiffs and I try and think, well, what am I going to tell my client when they come to me? Do I tell them to go to the labor commissioner or not? And you've got the labor commissioner in a letter, an opinion letter saying, this is not required. My office doesn't handle this. I have no mechanism for this. I handle a large volume of cases. I can't start exhausting people's remedies before they head off to court. I mean, so you have a very pragmatic problem in addition to the legal issue of Campbell not really deciding this narrow issue. And I think when you go to Campbell and you look, Campbell does address 6310 and 6312. They do. And what they say is, well, because the right existed in common law before it was codified in statute, that really there is no requirement for any exhaustion because it's a right that already existed in the first place. And I think that's what Campbell recognizes. So I do believe that if this narrow issue were before the California Supreme Court, I think that they would recognize that in this circumstance, when you're and something that clearly existed for common law for some period of time, that there would be no exhaustion required for these types of claims, particularly when the statute is permissive. It says may. And this Court took a look at it back in 2003 and stated in the Freud opinion that, you know, it's not that you can go choose either remedy. It's not exclusive. Now, admittedly, the Court didn't address the exhaustion issue. This Court did say, though, that it's not exclusive, which I think does make sense because you have some small claims of wages that may only be a couple hundred dollars or a couple thousand dollars. Those types of claims are perfect for the labor commissioner. But the type of claim my client's handling, a wrongful termination claim for a, you know, a peace officer career, it really is not. And so I don't – I think that if Campbell were to address the issue today or if the California Supreme Court were to address the issue today, I think that the California Supreme Court would likely agree with Lloyd and with Daley. The other issue that is apparent in this case is whether or not what was provided to Mr. Ramirez after his termination was sufficient to satisfy due process. And I think it raises two important issues. One is whether or not Mr. Burke was considered a biased hearing officer. First and foremost, that has to be addressed. And then number two, whether or not what they offered to Mr. Ramirez post-termination satisfied the tenets of due process for a public employee. I really think those are the two questions that are at issue. And we would submit to the Court that there is evidence, there's factual evidence out there, that Mr. Burke – Sotomayor, could I ask you about the due process claim and Burke as a hearing officer? That was never appealed at all administratively, correct, to a personnel committee or anything within the system, correct? No. That was not appealed administratively to the Personnel Commission. The employee may appeal to the Personnel Commission, but my understanding is the employee could also proceed to court if they choose to do so under 1983, which is what happened here in this case. But what I wanted to state to the Court under that two-part analysis is that Mr. Burke, we submitted evidence not only from my client, but from other people present at the hearing, Mr. Morris, who did describe the atmosphere at the hearing, did describe what was said at the hearing, did describe the animosity at the hearing and the things that were even said to him when he tried to stand up, so to speak, to provide testimony on my client's behalf. And so in addition to his involvement, Mr. Burke's involvement, throughout this entire process, the grand jury, the suspension of the collared shirt incident, going forth to the investigation, meeting with the investigator behind closed doors about questions, and then going to the Scali hearing, all that stuff shows involvement, but I think what's also really important is when he got to the hearing, he showed animosity towards my client, which there is evidence out there to establish that's disputed, admittedly, but we're at the summary judgment stage. And the second question is, was the process, did it satisfy due process? And we would submit to this Court, there's not a single case out there that says, hey, you've got the Personnel Commission down the road. You can go there if you want to. That satisfies the post-hearing requirements when the Scali officer is not fair and impartial or neutral. And so I think that based upon what happened here, Mr. Ramirez did not receive the process that was due. He had an 11-year peace officer's career that was lost because of this. And I see I'm getting very close to my time. I'd like to reserve two minutes for rebuttal, if possible. Thank you. Good morning, Your Honor. May it please the Court. I'm Stephen Robb, and I represent the County of Marin, William Burke, and Michael Daly. And so I'd like to start off to address Mr. Porter's first comments about the process. You know, there's he's relying basically on some very unfavorable cases, the cases that have been examined and other cases that have been disregarding his cases because they don't provide a proper analysis. And I think properly this Court should rely on Campbell and what the Supreme Court has said. But I'd like to make an additional point here that no matter how you come out on that debate between does he need to file an administrative complaint with the Division of Labor, ultimately, even if he didn't have to file that complaint, he still had to comply with the Government Tort Claims Act. So even if you accept all these arguments about the disputed case law, the plaintiffs still failed to take the proper pre-filing steps to bring an action against the County of Marin. In California, the Tort Claims Act requires a opportunity for the government entity to investigate a claim before it's filed in court. And you have to file that Tort Claims Act complaint six months after the event occurred. And ultimately, the deadline is one year, even if you're going to be late. And that Tort Claims Act applies to all damages and monetary claims that are being made. So while there's a great deal of debate about complying with the administrative complaint process, if that isn't needed, you have to comply with the Tort Claims Act. Now, the Tort Claims Act has an exception. If there's a codified administrative complaint direction, you then don't have to comply with the Tort Claims Act. So you only have to do one or the other. But you have to do one. And this case was a failure of both. You cannot just sue a public entity like the County of Marin or its employees by going into court without doing some sort of administrative prerequisite. Your state court, there are exceptions for eminent domain and other things that don't apply to this case. But for claims of money and damages, you have to do some sort of prerequisite claims filing. And that wasn't done here at all. So that no matter how you decide the division of labor issue, ultimately, this cause of action needs to be thrown out because there was no... What if he's only seeking injunctive relief? What if the retaliation claim is to get reinstated? Okay. So there are certain types of where no need to go forward. It's for money and damages in California. Injunctive relief only is not required. But if it's a combination of injunctive relief and monetary damages, then a Tort Claims Act compliance is required. And it has to be alleged in the complaint. So in the particular factual circumstances here, a Tort Claims Act had to be complied with. There are some other exceptions to the Tort Claims Act, like federal claims don't need to be pursued through the Tort Claims Act, things like that. It's a state procedural requirement for state causes of action. And that's what he's bringing here is the state cause of action for money and damages. Okay. Now, I'd like to move on to... Did you plead that? Yes, it was in the briefs. No, it's not in your affirmative defenses. I'm looking in the... You've got 30 affirmative defenses. I don't think it's in there. Failure to comply with the Tort Claims Act? Right. Yeah. I think it's in every one of our complaints. The Tort Claims Act is Government Code 800 series, so it says failure to comply with Government Code 800-something and 900. I see it as a tagline in your brief, but I'm looking back in the trial court. I was just looking at your affirmative defenses. I'm skipping them. The 30 of them, I don't seem to see that, but I could have missed it. You have to assert it as an affirmative defense. Yes. Well, Your Honor, actually, it's a pleading requirement. You have to plead compliance with the Tort Claims Act. It's not necessarily an affirmative defense. A proper complaint must plead compliance with the Tort Claims Act to even survive a demur. It's true, but you can't go through the whole trial court. Let's say they don't plead it, and if you don't tell the trial court, then you've waived. I understand, Your Honor. We did tell the trial court about it. We raised it in the summary judgment motion. And if maybe we didn't state the claim, the Tort Claims Act, but if in the affirmative defenses when it says Government Code, like, 820 EDSEC or something like that, that would be the Tort Claims Act. It's the series of the 800 and 900s of the Government Code, and I believe that that was raised in the defense. I could actually, maybe if you let me.  The reason I raised it is I wanted to give you an opportunity to respond. Do you think it's in there? We'll check it out. Okay. Thank you, Your Honor. Now, the next issue is I want to respond to Mr. Poore and the due process. And I think it's really important, I mean, to look at the due process procedure and remember that the due process claim is against William Burke. It's against Mike Daly also, but primarily they're focusing on what William Burke  So they're saying that there's two things going on. And really they're saying that he was a biased hearing officer. And I think in California, when you're dealing with public employment and you're dealing with the process of terminating a public employee, this idea that William Burke is a hearing officer who receives evidence and things like that is not an accurate representation of the whole process. The whole process is, first, you have an investigation into an employee and you have some findings and then you give notice to the employee what they are. And you give that employee an opportunity to respond. So what William Burke was doing is he had already had his employees give notice to Marco Ramirez, and then he was acting as kind of the decision maker about whether or not he was going to terminate Marco Ramirez. So he's not a hearing officer trying to decide what all the evidence is and make some sort of unbiased rulings. What he's doing is he's conducting a skelly proceeding. He is the department appointing authority. And ultimately what happens after the skelling, it's called a hearing but it's not an evidentiary hearing, is William Burke would then become the advocate going before the personnel commission for the county of Marin, trying to convince the personnel commission to terminate Marco Ramirez. There's actually, they're opponents to each other, and ultimately the burden of proof would have fallen to William Burke to go to the personnel commission and explain to them that he should be terminated. So there's not some sort of neutral, unbiased hearing of an evidentiary nature that occurs at the skelly. The skelly is for what skelly laid out, which distills down to notice of the charges against you and an opportunity to respond. The opportunity to respond was Ramirez coming in and trying to convince Burke not to terminate him. So. But your position is at that point you can act arbitrarily and capriciously and with bias? No. And that is absolutely not what he can do. So what are his obligations in terms of fairness at that point? It's to receive the information. Well, first he has to give notice of what is occurring and the facts that are relied on. And so the county did that and provided Ramirez with everything that he needed. Then Ramirez could have submitted things in writing or he could come face to face with Mr. Burke. So Mr. Burke at that point just has to provide Mr. Ramirez with an opportunity to be heard. So, I mean, I take your argument, but are you really saying that it doesn't matter how biased a person is in this process, that someone can present a complete defense and say, well, I know it's not going to make any difference because the ultimate decider is so biased that the reason is not going to prevail? I mean, how extreme is your position? No, I would not go that far. So where are the limits? I guess I'm not understanding. Okay. I think it's what you stated is appropriate, that he can't act in an arbitrary and capricious manner. And I think the evidence that was submitted shows that he didn't. He was relying upon the investigation. He was relying upon this third-party investigator who made all these factual findings. He's also relying upon the person that made the recommendation to him to terminate. So there's more checks than that. It's not completely arbitrary and capricious. And so he can be hostile. I mean, the allegations are that he was hostile in the hearing. That doesn't matter. What matters is the standard that he has to follow is if they're going to accuse somebody of bias, you have to come up with some sort of concrete evidence. You can't just speculate. You can't just say, he seemed to not like me at the hearing. That's not enough. I guess I read your argument maybe a little differently, so correct me if I'm wrong. And that was, of course, you disputed that he was biased, but that the due process remedy for that is the personnel commission, where he then bears the so-called hearing officer bears the burden of proof to show the justification for termination. So I thought you said, in effect, that cures any due process claim. Okay. If I just would want to add to that and say you have a whole process. And so the county grants a process to everything where there's an evidentiary hearing is ultimately provided, where William Burke becomes the adversary to Marco Ramirez. And so in the particular circumstance of that Skelly hearing, I think that you have to make an extreme evidence showing that he was acting in an arbitrary and capricious manner, that he had this intent to discriminate against Ramirez. And there's specific factual showings of that, and I don't think that exists here. Okay. All right. The other thing I want to respond to is, again, on the due process causes of action, that the county system is set up to have employment decisions are ultimately made by the personnel commission, this body of five. They're not county employees. They're appointed by the Board of Supervisors to act as members of the community. And so decisions to terminate are reviewable to them, and the county is bound by the decisions of this body. So the idea that you can circumvent the process of a termination decision being made and taking it right to court, right away, before you have the opportunity to grant all of the hearing opportunities and the right to grant Ramirez a panel of five people deciding his case is, I think, doesn't comport with the way that the system is structured and doesn't comport with the due process law. We tried to give Ramirez due process. We tried to give the process that was due. And he withdrew from the process before he had a chance to go in and argue that he shouldn't have been terminated. I just have to go back to the Tort Claims Act because I've been searching the record, and it doesn't appear to me that you raised it with the district court below. You raised it on appeal. Isn't that right? Well, I know I raised it on appeal. Are you talking about if I put it in the answer? At any point that you would have raised it at the district court below. Did you raise it in the summary judgment briefing? I can't recall that off the top of my head, but what I would like to say is that it's a jurisdictional issue. Compliance with the Tort Claims Act is jurisdictional. It doesn't matter when it's raised, and it can never be waived. Okay. Let me suggest this. We have a piece of paper the clerk has for additional citations. When you find the location in the record where you raised it either by statute or reference to the Tort Claims Act, you can make a notation of that and provide it to the clerk, and then that will speed the process. Thank you, Your Honor. Thank you. Thank you, counsel. I'd like to go ahead and address just two points, if I can, in the brief rebuttal that I have. The first one is the California Tort Claims Act. With respect to that, it was not raised in the answer. It is a new issue on appeal. It was not raised before the district court below. And you didn't respond to his raising it in his appeals brief, correct? I did at the conclusion of my reply brief. Yes, it's like on page 23, 24 of them. But that's the only place that we've seen any joining of the issue in your view. Absolutely. And really why that's important, and I put this in my reply brief, is that there are many different ways to comply with the California Tort Claims Act, and many different writings can qualify. There are late claims acceptance procedures. There is a whole wide variety of litigation that can occur over whether or not somebody complied with the act. And really that's also important because my client did submit internally to the county of Marin a complaint under their personnel management regulation 21, which did raise the very issues that we have here today, the unsafe work conditions, the collared shirt incident, those types of things. And just for the record citation, that is at 1229 through 1230. So, I mean, even if this Court looks at the California Tort Claims Act and says, hey, plaintiff, you should have submitted something, he did. He submitted an internal complaint through their personnel management regulations that address these issues. With respect to the issue of ---- And I assume that part of your argument is that some of your claims are not subject to that anyway. Absolutely. I mean, I think that counsel is just raising it in the context of the California Labor Code claim in which there may be a requirement to file a Tort Claims Act form, you know, depending upon the circumstances, which has not been briefed in this particular case here. I also want to correct the issue about counsel talks about the personnel commission and them being kind of the final authority and everything else. I covered this during my depositions with the relevant decision-makers. I asked Mr. Burke who was the final decision-maker, and he very clearly testified that he was. And that can be found at the record at 1217, and the deposition citation is 197 lines 10 through 12. With that, I'll conclude unless the Court has any questions. Thank you, counsel. Thank you both for your arguments. The case will be submitted for decision.
judges: Kendall, Thomas, McKeown